UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WALTER STEWART,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:22-cv-00203-RDP |
| } | |
| **THE BOARD OF TRUSTEES for the** } | |
| **UNIVERSITY OF ALABAMA SYSTEM,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

This matter is before the court on Defendant's Partial Motion to Dismiss. (Doc. # 21). The motion is fully briefed (Docs. # 21, 26, 27) and ripe for review. For the reasons discussed below, the motion is due to be granted in part.

**I.      Background**

Plaintiff is an African-American employee who works as a Director in the University of Alabama-Birmingham ("UAB") Veterans Services Department. (Doc. # 20 ¶ 1). He alleges that UAB enforces "a corporate policy and practice that expressly and impliedly denies him pay equal to that of Caucasian employees." (*Id.* ¶ 14). According to Plaintiff, "similarly situated white Directors within the University of Alabama System[1] receive $13,000.00 to $30,000.00 more per year than him in comparison." (*Id.* ¶ 12) (footnote added).

Plaintiff brings two claims: (1) Count I: Race Discrimination in Violation of Title VII; and (2) Count II: Disparate Impact Discrimination on the Basis of Race in Violation of Title VII of the Civil Rights Act of 1964. (*Id.*). Plaintiff seeks a declaratory judgment, a permanent injunction,

---

[1] As alleged in the amended complaint, the University of Alabama System includes the University of Alabama, the University of Alabama-Birmingham, and the University of Alabama-Huntsville. (Doc. # 20 at 1 n.1).

back pay, reinstatement or front pay, compensatory damages, punitive damages, and any other relief that justice may require. (*Id.*).

Defendant has filed a Partial Motion to Dismiss Count II for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. # 21). This is the second time the court has considered this issue. Defendant previously filed a Partial Motion to Dismiss on June 13, 2022, which also challenged the sufficiency of Count II under Rule 12(b)(6). (Doc. # 5). The court granted that motion on August 8, 2022 and dismissed Count II for failure to state a claim and found that Plaintiff did not sufficiently describe a specific facially-neutral employment policy or practice that caused the alleged disparate impact. (Doc. # 18 at 5). The court allowed Plaintiff to re-plead his complaint but instructed that he "must sufficiently allege a causal connection between the specific policy and the disparate impact." (*Id.*).

In the Amended Complaint, Plaintiff makes the following allegations in support of his disparate impact claim in Count II:

- "UAB uses its careers page to post open employment positions. Upon information and belief, one can achieve pay raises and/or promotions through applying for a job posting and one [sic] through reclassification to a higher title." (Doc. # 20 ¶ 15).

- "The re-classification process allows UAB to promote or raise the pay of employees without the job actually being posted for open-bid on its careers website." (*Id.* ¶ 16).

- "Pay raises given out this way do not have to be posted because they are not considered vacant positions because the employee occupying the position does not leave it, but if he/she has performed above and beyond their current duties or responsibilities or if their role has evolved or changed, a re-classification could be sought for them. By this mechanism UAB is allowed to circumvent its regular job posting procedure and award higher pay to incumbent employees by changing their job title for the position which entails a raise in pay." (*Id.* ¶ 17).

- "Upon information and belief, UAB uses this re-classification process in conjunction with what are called 'Performance Evaluation' process(es) administered by an overwhelmingly Caucasian group of selectors for organization wide compensation decisions that work to the detriment of its African-American employees." (*Id.* ¶ 18).

- "These processes disparately impacted African-American employees because they allow subjectivity and favoritism to influence employment decisions. Because of this, the decision-makers are free to exercise their discretion in an unguided, subjective manner that provides a ready mechanism for Caucasians to vent discriminatory feelings, whether conscious or unconscious, upon African-American employees." (*Id.* ¶ 19).

Defendant contends that Plaintiff has not identified a specific facially-neutral policy, nor has he sufficiently pled a causal connection between a UAB policy and the alleged disparate impact. (Doc. # 21 at 4). Thus, Defendant argues that Count II fails to state a claim and therefore must be dismissed. (*Id.*).

## II. Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for

relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

### III. Analysis

#### A. Plaintiff's claims for punitive damages and reinstatement are due to be dismissed.

In response to Defendant's first Partial Motion to Dismiss (Doc. # 5), Plaintiff has conceded that he is not entitled to punitive damages because Defendant is a government agency, and that he is not entitled to front pay or reinstatement because he remains employed as UAB's Director of Veteran Services. (Doc. # 16 at 1). Accordingly, the court dismissed these claims. (Docs. # 18, 19). In spite of this, Plaintiff continues to seek punitive damages and reinstatement or front pay in his Amended Complaint. (Doc. # 20 at 8). He has not explained why these claims should be allowed to go forward; indeed, he has not even addressed the issue. (*See* Doc. # 26). Thus, any claims for punitive damages, reinstatement, or front pay are due to be dismissed.

### B.     Count II (Disparate Impact Discrimination on the Basis of Race in Violation of Title VII of the Civil Rights Act of 1964) is not due to be dismissed at this time.

"To establish a *prima facie* case of disparate impact discrimination, a plaintiff must show (1) a significant statistical disparity among members of different racial groups; (2) a specific facially-neutral employment policy or practice; and (3) a causal nexus between that specific policy or practice and the statistical disparity." *Turner v. City of Auburn*, 361 F. App'x 62, 65 (11th Cir. 2010) (citing *Cooper v. Southern Co.*, 390 F.3d 695, 724 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006)). However, "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *Baggett v. Rehau, Inc.*, No. 07-PWG-2224-S, 2008 WL 11344812, at *2 (N.D. Ala. Feb. 7, 2008). At the motion to dismiss stage, detailed statistical data is not required, but the complaint must provide the defendant with sufficient notice as to the specific policies challenged. *See Forsyth v. Univ. of Ala. Bd. of Trs.*, No.17-cv-00854, 2018 WL 4517592, at *2 (N.D. Ala. Sept. 20, 2018).

The Supreme Court has held that "subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases." *Watson v. Fort Worth Bank & Tr.*, 487 U.S 977, 991 (1988). In *Watson*, an African American bank teller who was denied promotions in favor of white employees sued her employer for racial discrimination. *Id.* at 982. The bank did not have precise or formal hiring criteria but rather relied on the subjective judgment of white supervisors to make employment decisions. *Id.* The Court found that "an employer's policy of leaving promotion decisions to the unchecked discretion of lower level supervisors" is a facially-neutral employment practice that might, in some cases, disparately impact a protected group. *Id.* at 990-91. The Court reasoned that, "[i]f an employer's undisciplined system of

5

subjective decisionmaking has precisely the same effects as a system pervaded by impermissible intentional discrimination, it is difficult to see why Title VII's proscription against discriminatory actions should not apply." *Id.*

Applying *Watson*, the Eleventh Circuit has also permitted disparate impact claims that challenge subjective employment practices. *See EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263 (11th Cir. 2000). In *Joe's Stone Crab*, the court evaluated a disparate impact claim for gender discrimination against a Miami seafood restaurant that disproportionately hired male servers. *Id.* at 1278. There, the challenged neutral employment practices were (1) using a "word of mouth" recruiting system rather than publicly advertising job openings; and (2) delegating hiring authority to subordinate staff to make subjective decisions with little direction or oversight. *Id.* While the Eleventh Circuit acknowledged that such policies could theoretically support a disparate impact claim, it found that the plaintiff did not prove that these policies actually caused a disparate impact. *Id.* at 1278-79. There was no indication that the "word of mouth" recruiting practices kept qualified women from learning about available positions, nor was there sufficient evidence that women were disadvantaged by the subjective hiring process. *Id.* However, this was after the district court conducted a bench trial and ruled on the merits, not at the motion to dismiss stage. *Id.*

Here, the court again considers whether Plaintiff has sufficiently alleged a specific facially-neutral employment policy or practice. (*See* Doc. # 18). Viewing the Amended Complaint in the light most favorable to Plaintiff, the non-moving party, the court finds that Plaintiff has stated a claim for disparate impact discrimination in violation of Title VII. As the court understands it, Plaintiff alleges that UAB has a policy of (1) promoting employees internally without publicly posting open positions on its careers website; and (2) delegating promotion and compensation decisions to a majority-white group of selectors who are permitted to make subjective decisions

without any guidance or oversight. (Doc. # 20 ¶¶ 15-20). According to Plaintiff, this allows the selectors to discriminate against African Americans, whether consciously or unconsciously, and this disparately impacts African American employees in the form of lower salaries. (*Id.*).

*Watson* and *Joe's Stone Crab* illustrate that a plaintiff may sufficiently allege a disparate impact claim based on subjective employment policies, although such allegations may ultimately be difficult to prove. *See* 487 U.S. at 990-91; 220 F.3d at 1278-79. At the motion to dismiss stage, the ultimate question for the court is not whether Plaintiff is likely to succeed at trial but whether the Amended Complaint provides fair notice of the challenged policies and the basis for the claim. *See Forsyth*, 2018 WL 4517592, at *6. The court finds that it does. Because Plaintiff has stated a claim for disparate impact discrimination that is "plausible on its face," dismissal is not appropriate at this time. *See Twombly*, 550 U.S. at 570.

## CONCLUSION

For the foregoing reasons, the Partial Motion to Dismiss (Doc. # 21) is due to be denied in part. To the extent the motion requests dismissal of Plaintiff's claims for punitive damages, reinstatement, and front pay, it is due to be granted. But, the request to dismiss Count II for failure to state a claim is due to be denied. A corresponding order will be entered.

**DONE** and **ORDERED** this December 16, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE